Ms. Goldberg. Thank you, Your Honor. May it please the Court, Goni F. Goldberg for Petitioner Ms. Martha Randall. This case arises from a termination for alleged unsatisfactory performance in the federal sector. Ms. Randall maintains that the arbitrator abused his discretion and violated the norms of due process and engaged in procedural harm not when he re-opened the record to accept documentation after the close of the record of OPM approval of the performance system. However, when he failed to notify the petitioner of his re-opening of the record then he failed to allow a response to pleadings on that issue. Ms. Randall further maintains that the decision is unsupported by substantial evidence when the arbitrator determined that the documents received after the close of the record, namely two letters from OPM, were dispositive on the prima facie element of the case. Ms. Goldberg, may I ask you something? I don't quite understand. Did the agency where she worked, that's called Water Control, did they have their own plan or were they covered by a plan from the department of which they were a part? During her pick, she began on one performance plan. Was that a plan of the department? No, that was a plan from the INS, the previous agency for where she worked. She began working in 1999 at the Department of Justice, specifically Immigration and Naturalization Services. However, after 2001, there was a reorganization of the federal government and she was reorganized into the Border Patrol. I'm sorry, she was reorganized into CBP. Border Patrol was reorganized. I understand. I just want to, what's troubling me about this thing is we have two documents showing that the department plan has been approved. We have two documents showing that the department plan has been approved. My question is, was that the plan under which she was visiting? We have two documents, one approving a Department of Treasury plan. She never worked for the Department of Treasury. She never did? She never did. She worked for the Department of Justice and when the CBP, the Customs and Border Protection was created, they merged from multiple agencies including Customs, which was the Department of Treasury, and the Border Patrol, which was part of the Department of Justice, and they merged in addition to other agencies. Those were the main agencies that were merged together. I still want, maybe I have to make one more question. Are we talking about plans of constituents in the Department of Plans of the Department? What plan was she disciplined under? Whose plan was it? Was it a Department plan or was it a plan of the Border Patrol? It was a Border Patrol plan that had stemmed from the Department of Justice. Did that fall under the Treasury Department after March of 2003? No, it fell under the Department of Homeland Security after March of 2003, not under the Department of Treasury. During the period between the creation of DHS and the time that the DHS had formulated its own plan, wasn't there a carryover period in which the Treasury plan was made applicable to all entities that were within Customs and Border Patrol? That is what the agency is arguing. In fact, 6 U.S.C. 552E2, which the agency quotes to, states in relevant part that the transfer pursuant to this chapter of personnel shall not alter the terms and conditions of employment, including compensation of any employees who are transferred. So in other words, the plans of personnel systems under the Border Patrol remained the DOJ plans until new DHS plans were created. And that is why you see in a later letter, the second letter, OPM approving a DHS plan, but it's not clear which plan they were approving. And that is our argument that this decision is unsupported by substantial evidence and that there was procedural, actual harmful error. Because in part, your question is, there is no answer to it because there was no evidence introduced into the record to find out whether that second letter was approving any plan relevant to this case. There is a letter approving a plan. We don't know which plan. And the arbitrator, without any foundation and without accepting any rebuttal evidence, determined that this was sufficient evidence. This letter which doesn't specify which plan is being approved. Now, let me ask you a question about the procedural aspects of your claim. At the end, and this is day 7 of the arbitration, there's an exchange between Ms. Niswander and the arbitrator. You're familiar with it. I think it starts on page 71 of the red. Yes, that's something I saw. It looks as if it was contemplated, and you can correct me if this is not a fair characterization, it looks as if it was contemplated that the issue of approval of the plan would be treated in supplemental briefing by the parties. The exchange says, you can raise that as part of your brief. And Ms. Niswander says, we will. I think they're talking about the approval issue. And the arbitrator interposes a comment. She says, I will. I will provide the cases supporting her legal position with the brief. And it looks to me as if, let's see, the arbitrator then says, if I become convinced after the briefs are in that that's the case, that is to say that you have a right to have the issue of approval adjudicated before the arbitrator, I might very well reopen the hearing for the purpose of allowing the agency to put on evidence in support of that. Isn't that just what happened? And in that sense, wasn't Ms. Reinfeldt put on notice that to the extent that this issue needed to be adjudicated, it would be adjudicated in the post-hearing briefs? Well, in fact, you're right. This is exactly what happened, that he did reopen the hearing for the purpose of allowing the agency to put on evidence in support of that. But I would argue that this particular conversation cannot be read without the first conversation, which happened on, depending on how you count the days, the first or second day. So on the first day, she, being Ms. Neiswater, the union representative, raises... That's a very good question, which I don't have an answer to. I've inquired... I thought she was a lawyer, and when I inquired, I was informed that she wasn't a lawyer. And then I inquired again, and I was informed she was a lawyer. So I don't have a sufficient... I don't have a conclusive answer for you. I apologize. But she does admit that she was evaluated under the old system, and she doesn't appear to question the approval of that old system, does she? It's not clear that there's no discussion about that. She, being Ms. Neiswater, raises the issue of whether there's OPM approval, and there's no evidence put in by the agency of that issue. And, in fact, what the agency says, and going back to... Does she admit that she was evaluated under the old system? Yes, Your Honor. Did she ever really contest that that system was approved? The only contesting was in the first colloquy and the second colloquy, where Ms. Neiswater raises, by saying, I don't know how the agency is going to approve that OPM approved the performance system. And she doesn't specify which performance system she's asking the agency to approve. And, in response, the agency says, well, we are going to rely on the position description. And so, to answer Your Honor's question, even though, in fact, the case is reopened, for seven days the union believed that the agency was relying on solely the position description that had already been admitted into evidence and was completely unresponsive to the question of OPM approval. And so, when there is a discussion here, at the very end of the hearing, about what's going to go into the brief, I think the real focus here is that what's going into the brief are case law. There seems to be some confusion. The arbitrator seems to explicitly think he's dealing with the new system. But the parties, as far as I read it, both agreed you were dealing with the old system and she was properly evaluated under it. Are you now contesting that you were evaluated under the old system? We are definitely not contesting that we were evaluated under the old system. We are contesting that that was proper. So you weren't subject to any changing standards? We were, well, but that's also part of our appeal, Your Honor, that it was inappropriate because MSPB case law requires that when a new evaluation system, a new performance appraisal system goes into effect, that during the course of a PIP, that there is a requirement to evaluate under the new performance evaluation system. That's our very last, that starts on page 31 of our brief, our very last argument, that when the arbitrator found that she was evaluated under the new system, that that was unsupported by substantial evidence and that was also a violation of law. He should not have allowed her to have been evaluated under the old system because a new system had been placed in effect and it was substantially different than the first system. I see that. Your Honor, if I could just really quickly move back to the procedural point. Yes, Your Honor. And looking at the first case proceedings, it looks to me as if Ms. Niswander is saying that there's a, that the proof of the approval is part of the government's prima facie case. That is what she said, Your Honor. But that doesn't seem consistent with Daigle. Yes, what Daigle says is that... They have to have some reason to believe that there's a problem and then the government may have to come forward. Isn't that essentially it? Well, Daigle can be interpreted that way, but what Daigle says is when an appellant calls into, directly questions, but it doesn't actually give a standard by which you have to directly question. It does not say you have to have a good faith belief that there is a problem. It doesn't give a standard how much proof you have to give to call it into question. It just says directly call into question, and therefore it's the petitioner... Alleges that there is reason to believe that the agency is not in compliance with the law. Because my question is that is she doing anything more than simply saying prove it? It's part of your case. Is she saying I think there is good reason to believe there is noncompliance with the approval requirement such that the agency now has a burden to do something, which in the absence of my having called out the good reason to believe that there's a problem, it wouldn't happen. Right. Well, I think the very fact that she raised it in the manner in which she did was her method of calling it into question, of raising a good faith belief. This was a new agency, and Daigle was decided in 1999 before this huge, massive reorganization of the federal government, where the federal government had been, for lack of a better word, static in its organization. So that in Daigle they say why are we requiring after 20 years of the same performance evaluation systems, why are we requiring every time this proof that it was, again, approved, or it was approved, but here we have a brand new agency, and we have a changing performance appraisal system in the middle of the pit. So I think that by perhaps the method she raised it was ineffective. However, she was calling it directly into question. Thank you. Thank you, Ms. Goldberg. Let's go to the Governor. Ms. Berg. Thank you, Your Court. I'd like to clarify what I think might be a little bit of confusion regarding the different performance appraisal systems and performance management plans. Obviously, the agency submitted evidence of approval for the Department of Treasury 1996 plan. What was approved? I'm still trying to find out. What plan was approved? It was a continental plan, is that right? What kind of plan? In 2003, the Department of Homeland Security's department… I don't care what department. I'm trying to find out. There was some plan under which she was disciplined. My question, I'm trying to find out, was she disciplined under a plan for the whole, covering the entire department, or was she disciplined under a plan that was specifically designated and designed for Homeland Security? Well, hopefully my answer doesn't confuse things more. But the answer is this. There is an overarching performance appraisal system that gets approved. Up until November 2003, former Border Patrol employees, who used to be part of the Department of Justice, were evaluated under the performance appraisal system of the Department of Treasury for reasons that are explained in the brief, that I don't need to get into if they're confusing. But after November 2003, the Department of Homeland Security's appraisal system becomes the overarching plan. The actual performance work plan under which Ms. Rangel was evaluated spans a continuum that bridges over November 2003. So the performance work plan that she failed spans the 2003-2004 timeframe. The terms of her performance work plan did not change with the performance appraisal system change. She was still evaluated under the same factors, even after November 2003. Let me approach it a little differently. Does OPM approve only a plan for the whole department, or would it approve plans for component parts? That is, if Homeland Security came and wrote in to OPM and said, here's the plan we're going to follow, please approve it. Would OPM come back and approve it, or would OPM say, we don't approve your plan because you're a part of the Department of Homeland Security? You may not know the answer to that. I think the answer is that OPM approves department-wide appraisal systems, which is different than the performance work plan under which she's evaluated. The performance work plan under which she's evaluated, and by that I mean the work plan that involves critical elements and specific descriptions of what her job is and how she can be fully successful with this job. But would OPM prefer the performance appraisal system? Right, and that's different. That is the overarching system. At the department level? At the department level. That's different from the actual plan under which her job, her specific job, is evaluated. So the specific criteria for evaluating her job did not change, and did not change until after October 2004. And here's where I think the confusion arises. What Ms. Rangel, I think, is really saying, at least on the merits of this case, is that after 2004, when the specific criteria of her job performance, of the elements of her job performance, when those changed, she should have been evaluated under those changed criteria. That has nothing to do with the change in performance appraisal system that occurred in 2003. Absolutely nothing to do with it. They're completely two separate issues. So the first issue is whether OPM has approved the DHS-wide appraisal system. The second issue is whether she was evaluated under the correct work plan. Obviously, with respect to the first question, DHS submitted the full continuum of approvals. If Ms. Rangel thinks that she should have been evaluated under the Department of Justice approval system, I think she's wrong because the INS was abolished in 2002, so there really was no approval system that she could be evaluated under. But if, obviously, if this case were remanded, all that would happen is she would get an additional chance to explain what her position is, and maybe DHS would supply the Department of Justice appraisal system. And everybody knows that the Department of Justice has one. That's the whole point of DABLE, that all of the known agencies that exist already have performance appraisal systems that have already been approved. So really, ultimately, even if it were remanded, there would be no difference. So this is a classic case of harmless error. What do you think is required by DABLE to trigger the obligation of the government, the agency, to come forward with proof of an LPL-approved appraisal? At the very least, there has to be an allegation that there is reason to believe that the agency is not in compliance. That's a funny standard. An allegation that there is reason to believe. Or did I simply say that I have reason to believe? Really, the question is, do I have to put in some kind of evidence that there's a problem with the issue of approval, or do I simply call out to the administrative judge or the arbitrator that I think there may be a problem, and therefore now that transfers to the agency the obligation to put in evidence. I think that, well, based upon the rationale of DABLE, it is the former, meaning that you don't just allege that there is a reason, but you allege what the reason is. And I think the reason is, and DABLE gives a full explanation of why it's changing the policy. The policy used to be that this was the government's burden. In every case. In every case. It's better than the brown fish case. Exactly. And DABLE completely disposes with that. And the reason is because it's just, at least according to the MSPB, and then this Court has picked up on the rationale, which is you shouldn't call it anymore. There are circumstances under which agencies don't have approved performance appraisal systems, and it's really just, as DABLE calls it, a paperwork requirement. When you create a new agency, and I take your point about the carryover, and maybe the Treasury is the right carryover agency, but it certainly isn't crazy to assume that when you have a new agency that's created, that there is some uncertainty now as to whether all the paperwork has been done. So my question really is, let me put the question this way. If I'm representing an employee and I want to have all the elements of proof satisfied, it seems to me I'm going to be hard-pressed to come up with any better reason for saying that there may be some doubt as to approval other than, say, you know, this is a new agency. Components have been moving from one place to another. Put in the proof. I mean, why isn't that enough to trigger DABLE? I actually, I agree that that is a pretty good reason. The reality is that Ms. Rangel had never made that argument until at least as far as I can tell, her reply brief before this Court. Certainly never made it before the arbitrator. There was absolutely no evidence, even in her post-hearing brief, what her argument was. Whether the argument actually was this is a new agency, I don't think they have an approved performance appraisal system. And she was certainly given multiple opportunities to do so. I'm curious about something. Independent agencies such as the Securities and Exchange Commission or the Federal Trade Commission, they also have performance appraisal systems, and if they do, does OPM also approve them or is it limited to approval to the deployments? That is a, I don't know the answer to that question. I don't know whether the Commission's followed or OPM. I'm just curious about that. I'd like to figure out what this system does and how it works. Well, this is a more general answer to the question, but the OPM approvals of appraisal systems are very general. They're not approving the details of the performance management systems to which the employees are subject. So they're not approving the details of the critical elements and all of the specifics. They're just approving the general agency-wide plan. But getting back to Judge Breslin's question, I think the important point, well, first of all, we had no way of knowing what Ms. Rankle's real argument was, but the important point is ultimately no matter what appraisal system you want to use, there is an approved appraisal system. After 2003, we have a DHS approved appraisal system. Before 2003, we have a Treasury approved, an OPM approved appraisal. OPM's approval of Treasury's appraisal system. And like I said, obviously DOJ has an approved system. So if Ms. Rankle had raised that before the arbitrator, the arbitrator could have requested that and I'm sure the agency would have been able to come up with that. Our position is that that's a really troublesome question because INS had already been abolished. Thank you. Thank you. Ms. Goldberg, you have a minute or so remaining. Thank you, Your Honor. I think the very fact that we are tripping over ourselves to try to explain what she was evaluated under and whether it was approved and whose system it was only underscores why there was a lack of due process and why there was an abuse of discretion by this arbitrator. He allowed information to come in after the close of the record. That's procedurally permitted by the MSPB. But he didn't reopen the record or reconvene a hearing or do anything to understand these documents and how they actually apply to the case. And that is our argument here. My problem with that argument is that it looks to me as if at the point that the government introduced its post-hearing submission in the form of its brief, you had filed a simultaneous brief and you raised the issue in the brief and the government's response simultaneously was the two-letter judgment. Why didn't Ms. Rangel then say, well, wait a minute, this is a problem. I want the opportunity to make a further submission. I want a hearing. I want something by way of an opportunity to be heard further on this. I don't see that there was anything that the arbitrator did to say that that would not have been permitted. But she didn't take advantage of what seems to me of an opportunity to at least ask. Well, I have two responses to that. First, just as a factional matter, she had tried before the closing brief to submit rebuttal evidence on unrelated issues. Right. And at both times had been told by the arbitrator, one at the last day of arbitration and another one in the later motion, well, you already had this evidence beforehand and we're not going to allow you to submit after the close of the record. And in the motion, he reminds her that the record is now closed. You weren't allowed to submit because you filed a motion saying, look, we never expected this to happen. And now that it's coming in, we've got some good answers which would like to be heard on it. Could have done that. I don't know. We don't know what the arbitrator would have done if he'd filed a motion. And whether to let it in may never have excluded it. We had about, what, four months between the time that the brief was filed and the arbitrator presented his decision. You're absolutely right. And that brings me to my second point, which is that this court in Frampton versus Department of Interior, I believe, said also in that case, you know, and in that case, he rambled and he was repetitive and the H.A. had cut him, the administrative judge had cut him off, and then he argued, well, I shouldn't have been cut off. And in Frampton, the court said, even when there are unclean hands, that's not their exact language, but this court said that it's still up to the decision maker to provide a fair and neutral hearing and to allow all evidence to come in and give notice and give the right to fully reply. And so that would be our second- Thank you, Ms. Goldberg. Thank you very much. Yes. We can hear the next case now. It's Cammie versus Mulchers.